452 A.2d 772

**COMMONWEALTH of Pennsylvania**

· v.

**Donald L. WILSON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 6, 1980.

Filed Nov. 19, 1982.

John J. Moran, II, Assistant Public Defender, York, for appellant.

Floyd P. Jones, Assistant District Attorney, York, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

CERCONE, President Judge:

This is a direct appeal from the judgment of sentence imposed by the Court of Common Pleas of York County on September 5, 1978.

On July 18, 1978, appellant entered pleas of guilty to the charges of aggravated assault, kidnapping, rape and involuntary deviate sexual intercourse. On September 5, 1978, appellant was sentenced to imprisonment in a state correctional institution for a term of not less than ten (10) nor more than twenty (20) years for each count of kidnapping, rape and involuntary deviate sexual intercourse in Criminal Action No. 382 of 1978. The sentence was to run concurrently with respect to each count. On the charge of aggravated assault entered in Criminal Action No. 350 of 1978, appellant was ordered to serve a prison term of five (5) to ten (10) years. This period of internment was to run consecutively with that imposed in Criminal Action No. 382 of 1978. On September 15, 1978, counsel for appellant in Action No. 350 filed a petition for reconsideration of the punishment levied by the court for aggravated assault. By an order dated October 11, 1978, the court indicated its unwillingness to modify the terms of that sentence although it did agree to alter the order in which the sentences in Nos. 382 and 350 would be served.

The facts surrounding appellant's arrest for aggravated assault are not at issue and are deserving of only the briefest recitation. On March 3, 1978, appellant accosted Dian J. Burkhart of Emigsville, Pennsylvania in the parking lot of the York Mall located on East Market Street in York, Pennsylvania. Appellant compelled Ms. Burkhart at knifepoint to drive him in her car for a short distance to at a location several hundred yards from the Sprigettsbury Township Police Department. During the period in which appellant was in the vehicle, Ms. Burkhart was forced to commit fellatio upon appellant. In addition, upon parking the automobile, appellant forcibly involved the victim in other deviate sexual acts which culminated, ultimately, in the rape of Ms. Burkhart. After the rape, appellant surrendered his knife to the victim, alighted from the automobile and fled from the scene.

On March 14, 1978, while walking along a sidewalk in York, Pennsylvania, appellant was stopped by Shirley Stam-

baugh who asked him for assistance in locating a parking meter which had been enshrouded by a recent snowfall. After offering some suggestions to Ms. Stambaugh, appellant pushed the woman through the open door of her automobile and onto its front seat where he brandished a paring knife before the victim's face. Ms. Stambaugh's screams commanded the attention of a local businessman and a youth who were then passing by this scene on the sidewalk next to the victim's car. These individuals summoned the police and attempted to subdue appellant. During the fracas which accompanied appellant's capture, appellant inadvertently inflicted a gash on Ms. Stambaugh's neck with the knife. The commission of these offenses followed closely on the heels of appellant's pre-release from a Community Work Program. Appellant participated in the program after having served a brief portion of a ten (10) year sentence imposed for appellant's perpetration of a series of sexual crimes in 1974.

Appellant now seeks relief from the lower court's imposition of a five (5) to ten (10) year term of incarceration for aggravated assault in No. 350 which was to run consecutive to the sentence imposed in No. 382. He denounces the sentence as violative of the sentencing guidelines in that it is injudiciously harsh, unsupported by the evidence on the record, and inconsistent with both the character of appellant and the nature of the offense. For the reasons advanced *infra*, we now conclude that appellant's argument is without merit and hold that the lower court acted within the bounds of its lawful discretion in refusing to reconsider its sentence prescribed for the crime of aggravated assault in Criminal Action No. 350 of 1978.

The most serious of appellant's allegations are those maintaining that the sentencing judge ignored the nature of the offense as well as the character and rehabilitative needs of appellant, specifically, his alleged need for psychiatric counselling.[1] After conducting a careful review of the rec-

1. Appellant correctly instructs that on the date the instant sentence was imposed, the lower court was obliged by the Sentencing Code to prescribe punishment "for a minimum amount of confinement that is

ord, we believe the lower court did not abuse its discretion in sentencing appellant to a prison term of five (5) to ten (10) years for aggravated assault.

■ Under the holding of our Supreme Court in *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977), the sentencing court must state on the record the reasons underlying the sentence which it imposes. *Id.,* 474 Pa. at 122, 377 A.2d at 143.[2] In *Commonwealth v. Wicks,* 265 Pa.Superior Ct. 305, 401 A.2d 1223 (1979), wherein we sought to explain the requirements of *Riggins,* we ruled that the statement of reasons must

> ... demonstrate that the court has considered the factors specified in the Code, and that it has balanced the specific background, character and circumstances of the defendant with the circumstances of the crime, the need for incarceration, to prevent future offenses by the defendant and by others, and the possibility of rehabilitation. *Id.,* 265 Pa.Superior Ct. at 314, 401 A.2d at 1227.

Although the sentencing court is also required to indicate on the record at the time of sentencing that the guidelines of the Sentencing Code were considered in the sentencing process,[3] we have not required the trial judge to recite each

consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." 18 Pa.C.S.A. § 1321(b). Since that time, however, the Sentencing Code has been amended and the operative language, stripped of the words "minimum amount of," now provides:

"... In selecting from the alternative set forth in subsection (a) the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community and rehabilitative needs of the defendant..." 42 Pa.C.S.A. § 9721(b).

**2.** *See* also *Commonwealth v. Rooney,* 296 Pa.Superior Ct. 288, 442 A.2d 773 (1982); *Commonwealth v. Weaver,* 280 Pa.Superior Ct. 481, 421 A.2d 824 (1980); and *Commonwealth v. Turecki,* 278 Pa.Superior Ct. 511, 420 A.2d 658 (1980).

**3.** *See Commonwealth v. Rooney, supra; Commonwealth v. Butch,* 487 Pa. 30, 407 A.2d 1302 (1979); *Commonwealth v. Kostka,* 475 Pa. 85, 379 A.2d 884 (1977); *Commonwealth v. Stufflet,* 291 Pa.Superior Ct. 516, 436 A.2d 235 (1981); *Commonwealth v. Williams,* 274

of those criteria and detail his respective responses. *Commonwealth v. Rooney,* 296 Pa.Superior Ct. at 293 n. 4, 442 A.2d at 775 n. 4.[4] Moreover, we have never viewed the Sentencing Code as containing the exclusive and inflexible formula for proper sentencing. A sentencing court's statement of reasons will not be deemed insufficient where it is plain that the court considered and applied the Code even though it makes no explicit reference to its guidelines. *Commonwealth v. Walton,* 289 Pa.Superior Ct. 411, 417, 433 A.2d 517, 519 (1981), *quoting Commonwealth v. Zimmerman, supra,* 282 Pa.Superior Ct. at 299, 422 A.2d at 1125.

The transcript of the sentencing proceeding does not substantiate appellant's allegations but reflects, instead, the great deference paid by the lower court to proper sentencing practice. Prior to its imposition of the sentence challenged instantly, the court stated its reasons for the sentence beginning with its consideration of the nature of the offense. The court acknowledged that the assault committed by appellant upon Ms. Stambaugh was accomplished with the use of a deadly weapon, specifically a knife. The court noted further that given the brutality of the assault the crime is not likely to be quickly forgotten by the victim. This conclusion is defensible since the record reveals that Ms. Stambaugh sustained a cut on her throat as a consequence of the attack. Appellant places considerable emphasis on the fact that the laceration was inflicted inadvertently and did not endanger the victim's life, and posits that "the characterization of the offense as violating the physical integrity of her body is patently absurd." We are unable to concur in this view for we believe it to be abundantly clear that any assault upon a person, regardless of the individual's gender, where carried out by the use of a knife or other dangerous instrument and in a manner likely to cause the victim to fear for his or her life, is very serious indeed. It

Pa.Superior Ct. 464, 418 A.2d 499 (1980); and *Commonwealth v. Skinner,* 275 Pa.Superior Ct. 251, 418 A.2d 707 (1980).

**4.** *See* also, *Commonwealth v. Zimmerman,* 282 Pa.Superior Ct. 286, 422 A.2d 1119 (1980); *Commonwealth v. Williams, supra;* and *Commonwealth v. Wicks, supra.*

was fortunate for all parties concerned that the victim in the case at bar was not more grievously injured. This fact alone, however, does not alter the serious nature of the offense.

Appellant's contention that the lower court imposed sentence without adequately appraising his character and rehabilitative needs is similarly frivolous. Contrary to appellant's representations, the sentencing court paid considerable attention to his unique background and character in passing sentence and stated so in specific, unmistakable language during the sentencing proceeding. The court began its review of appellant's personal qualities by noting that his criminal record dates to 1970 and its replete with convictions for grave offenses:

THE COURT: We note that the defendant presents to the Court a criminal record going back to 1970 for serious crimes. The first two crimes with which the defendant was charged and sentenced were crimes against property back in 1970 and 1971, and then the next three crimes with which he was charged all involve the same type of criminal activities as the defendant is presently charged with. In 1974, he was sentenced to ten years probation for Rape, Involuntary Deviate Sexual Intercourse. Later in 1974, he was sentenced five to ten years in a state correctional institution for Kidnapping, Statutory Rape and Involuntary Deviate Sexual Intercourse. Then a little later in 1974, he was given one year probation and two years probation on charges of Aggravated Assault, Prohibitive Offensive Weapons, Felonious Restraint and Indecent Assault. The defendant's past record unfortunately is replete with examples of the defendant engaging in criminal activity of the type which he is now before the Court. The record clearly indicates that probation has not worked. In fact, it also indicates he violated his parole term on two different occasions. The defendant was last in jail for these offenses occurred, November 8, 1974 until February 14, 1978 when he was released to the Community Treatment Program in York and within three weeks

thereafter of his release, he committed the first of these two offenses, such a short time after his release and having served a little over three years in a state correctional institution.

The sentencing judge next turned to the subject of appellant's apparent rehabilitative needs as they may be gleaned from his past criminal offenses and the extensive pre-sentence report which incorporated a comprehensive psychiatric evaluation of appellant:

THE COURT: Now, we note his institutional adjustment is good and that the progress he made there, the motivation he found there to want to continue his education was outstanding but our conclusion from all this is that within a controlled institutional setting, his behavior is satisfactory but when he is allowed the freedom of the community, he is unable to control his behavior. We have looked for signs of social stability in the defendant's background and we find that the only marriage of the defendant ended in divorce and there is one child. Apparently the defendant has had very little, if any, contacts with his child and the contacts are maintained by his parents. We note that the defendant is now engaged and we note that during his life the defendant has basically lived with his parents other than during the very short time he was married.

We are very much aware of the defendant's mental and emotional background and I dare say that this has been delved into by the various prison and correctional authorities in Pennsylvania more thoroughly than most prisoners emotional and mental background is inquired into and endeavored to be treated. The first report we have of this goes back back to February 12, 1975. There is a therapy report of September 8, 1976, a very detailed psychiatric evaluation of the defendant on October 7, 1977 which resulted in his assignment for community treatment in York County. In fact, the conclusion of that report is "Mr. Wilson may be at some risk for continuing to have a drinking problem but I believe there to be a fair chance that he would not commit sexual offenses again even if he

were to become intoxicated." Notwithstanding that conclusion of that psychiatric report, within three weeks thereafter he did just what that report said he would not do; Then after the arrest of these two offenses, the defendant underwent extensive psychological evaluation on April 29, 1978, a copy of which Mr. Moran has. We find these reports have been very thorough and have given the Court the necessary insight that the Court needs into passing sentence. Mr. Moran presented to this Court last week a petition for a psychological evaluation for sentencing purposes. We told Mr. Moran and we reiterate it on the record that we reject the application because the record and these reports I just mentioned provide the Court with ample information to assist the Court for sentencing purposes in terms of analyzing and reviewing the defendant's psychological and emotional health.

We note that the defendant has had an alcoholic problem since he has been fifteen and in fact, each of these two crimes appear on the presentence report to have been preceded by the use of alcohol by the defendant. We also note that the defendant lacks insight into these offenses and we are aware of the defendant's desire to see to it that these offenses are not repeated and yet we think it significant that after the defendant committed the first offense on March 3, 1978 which terminated in his telling the victim that he couldn't turn himself into the authorities that he did nothing by way of seeking help for his problems and rather continued in the Community without seeking help and then on March 14 committed the second criminal act which is before the Court for sentencing so we are very skeptical of the defendant's statements that he now wants help when he rejected a very likely opportunity to get help after he committed the first offense.

We repeat what we said earlier that the record indicates the defendant was fully cognizant of what he was doing during the March 3 episode when he kidnapped the victim at the York Mall and then raped her and committed the involuntary deviate sexual intercourse. His details which

he provided to the police, he was very fully aware of what he was doing and was able to account to them what had happened. It is obvious that past theraputic efforts have failed. As indicated, the last psychiatric evaluation in October indicated that the evaluator thought he was prepared to resume a place in society. *It may be that some place there is a resource available to deal with this defendant's emotional and psychological problems. A fairly extensive effort has been made so far by society. A fairly extensive effort has been made so far by society and the Commonwealth of Pennsylvania to deal with it but it appears to no avail, at least so far.*

(Emphasis added).

As the above quoted portions of the sentencing colloquoy amply demonstrate, the lower court adhered to the guidelines contained by the Sentencing Code in near-literal fashion, delineating in precise terms the reasons for the sentence and their specific relation to the gravity of the offense, as well as appellant's character and rehabilitative needs. As we so recently stated in *Commonwealth v. Campolei,* 284 Pa.Superior Ct. 291, 425 A.2d 818 (1981), it is not our function to determine whether we agree with the statements of the sentencing court "in the sense that if we had been the sentencing court we would have said the same thing and imposed the same sentence." *Id.,* 284 Pa.Superior Ct. at 299, 425 A.2d at 822.[5] So long as we are able to conclude that the confinement imposed on appellant was the product of an articulable consideration of sentencing guidelines, we will not rule that the lower court manifestly abused its discretion. *Commonwealth v. Rooney, supra,* 296 Pa.Superior Ct. at 294, 442 A.2d at 776.[6]

Appellant also attacks the sentence on the basis that it is unduly harsh and founded upon personal opinions embraced

5. *See* also *Commonwealth v. Rooney, supra,* 296 Pa.Superior Ct. at 294, 442 A.2d at 776.

6. *See* also *Commonwealth v. Edrington,* 490 Pa. 251, 416 A.2d 455 (1980); *Commonwealth v. Knight,* 479 Pa. 209, 387 A.2d 1297 (1978); and *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976).

by the sentencing judge, and not upon evidence gleaned from the record. Insofar as these contentions are conclusory in nature and lack plausibility in the absence of a demonstrated breach of the sentencing guidelines, our disposition of appellant's foregoing claims necessarily renders these arguments meritless.

Having determined that the sentence imposed by the lower court for aggravated assault in Criminal Action No. 350 of 1978 comports in all respects with the Sentencing Code and therefore is not manifestly excessive, and in the absence of any allegation that the sentence imposed exceeded the statutory limit, it is plain that the lower court did not abuse its discretion.

Affirmed.