487 A.2d 880

**COMMONWEALTH of Pennsylvania**

v.

**Peter B. McCUE, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1983.

Filed Jan. 16, 1985.

Petition for Allowance of Appeal Denied July 25, 1985.

118

Bernard V. O'Hare, Jr., Bethlehem, for appellant.

Richard R. Tomsho, Deputy District Attorney, Allentown, for Commonwealth, appellee.

Before SPAETH, President Judge, and BROSKY and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant challenges (1) the sufficiency of the evidence to support his conviction for sexual abuse of children, (2) the display of and references to certain pornographic material

in the jury's presence, (3) the trial court's refusal to permit defense counsel to question a Commonwealth witness regarding the circumstances under which she left her employment, (4) several jury instructions, and (5) his sentencing. We find these contentions meritless and, accordingly, affirm the judgment of sentence.

Appellant was arrested on October 23, 1979, and subsequently charged with five counts of criminal solicitation, one count of sexual abuse of children, and one count of possession of a prohibited offensive weapon. On May 30, 1980, following a hearing, appellant's petition to suppress evidence was denied. Approximately two weeks later, a jury trial commenced, at the conclusion of which appellant was found guilty of four counts of criminal solicitation, one count of sexual abuse of children, and one count of possession of a prohibited offensive weapon. Appellant's post-verdict motions were timely filed and denied. On March 8, 1982, appellant was sentenced to serve a term of nine months-to-three years imprisonment, and ordered to pay the costs of prosecution and $325.00 in fines. This appeal followed.

Appellant challenges first the sufficiency of the evidence supporting his conviction for sexual abuse of children.

The test for sufficiency of the evidence is whether accepting as true all of the evidence reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Lovette*, 498 Pa. 665, 669, 450 A.2d 975, 977 (1982); *see Commonwealth v. Ransome*, 485 Pa. 490, 493, 402 A.2d 1379, 1381 (1979), and *Commonwealth v. Miller*, 303 Pa.Superior Ct. 504, 507, 450 A.2d 40, 41 (1982).

18 Pa.C.S.A. § 6312(c) defines sexual abuse of children as follows:

Dissemination of photographs and films.—Any person who sells, displays for sale or transfer, or who possesses

for the purpose of sale, display for sale or transfer, any book, magazine, pamphlet, slide, photograph or film depicting a child under the age of 16 years engaging in a prohibited sexual act or in the simulation of such act is guilty of a felony of the third degree.

So viewed, the facts are as follows: In September, 1979, while a guest at the Holiday Inn West in Allentown, Pennsylvania, appellant became acquainted with a desk clerk named Janice Steckel. At the time, Ms. Steckel was a divorcee who lived with her eight-year old daughter, Melanie. On the evening of September 12, 1979, appellant and Ms. Steckel met for drinks at a local cocktail lounge known as the Village Inn. Later that evening, appellant, Steckel, and Melanie went to a restaurant for dinner. After dinner, all three returned to Steckel's apartment where appellant stated that he was a photographer and "that he was interested in making a movie star out of [Melanie]." (N.T. July 15, 1980 at 35). Appellant further announced that Steckel herself could make a lot of money if [she] let him take pictures of [Melanie]." (*Id.*) Steckel testified that, at the time, she believed appellant to be an ordinary children's photographer. Nevertheless, Steckel was unsure of appellant's proposition and requested time to think about it. The next morning, appellant approached Steckel at the Holiday Inn and showed her what appeared to be a Polaroid photograph of an eight-year-old girl, naked from the waist up, standing in a motel room.

Approximately one month later, on October 15, 1979, appellant and Steckel again met for drinks at the Village Inn. Upon returning to Steckel's apartment, appellant removed from the trunk of his car a booklet containing about 24 photographs. These photographs, which appellant displayed to Steckel, depicted nude children under the age of sixteen engaged in various sexual acts. Appellant informed Steckel that these were the type of pictures that he planned to take of her daughter. Additionally, appellant offered Steckel money if she would leave him alone in her apartment with her daughter, and asked Steckel to allow him to

perform oral intercourse on her daughter. Steckel refused appellant's requests and asked appellant to leave, which he did. The following day, Steckel told a co-worker about her contacts with appellant and the co-worker, in turn, notified the police. By pre-arrangement with the police, Steckel met with appellant at the Village Inn on the night of October 23, 1979. Also present at this meeting was Pennsylvania State Trooper Patricia Moe, posing as a friend of Steckel's in financial trouble, who might allow appellant to photograph her ten-year-old daughter. Appellant questioned Moe about her daughter's sex life and asked if he might see her daughter that night. Moe replied that appellant would not be able to see her daughter until the next morning. Thereafter, appellant offered Moe $50.00 for a photograph of her daughter in the nude, and $150.00 for a photograph showing both Moe and Steckel's daughters together in the nude. Appellant also offered Moe $100.00 if she and her daughter would spend the night with him in his motel room. Appellant further told Moe that he worked for "Piermont Pictures," a company specializing in photographing children. In reality, no such company exists. Rather, it is a fictitious organization used by appellant for the purpose of convincing people that he "could make a star [sic] out of them." (N.T. July 16, 1980 at 403). Appellant subsequently gave Moe the keys to his car so that she could retrieve "Piermont Pictures" application forms, which appellant said were located in a black folder in the trunk of his car. Upon finding the folder in question, Moe discovered that it contained adult pornographic magazines. Later, as the parties were leaving the Village Inn, appellant was arrested. At the time of his arrest, appellant was carrying the black folder containing the pornographic material.

Acting pursuant to two search warrants, the police conducted a search of appellant's automobile and his room at the Holiday Inn. In the trunk of appellant's car the police found adult and child pornographic films and magazines, a movie projector and screen, and "Piermont Pictures" para-

phernalia; the search of appellant's motel room uncovered a set of brass knuckles.

Appellant acknowledges both his possession of the child pornography and the fact that he displayed it to others. (Brief for Appellant at 39). However, he argues that there was no evidence adduced at trial demonstrating that he ever transferred or intended to transfer this pornographic material. While deliberating, the jury propounded a question to the trial judge concerning the statutory construction of the word "transfer," as that term is used in § 6312(c). The lower court referred to Webster's Dictionary and stated:

The definition of transfer is given in Webster's Dictionary as—to convey, carry, remove or send from one person, place or position to another. Now, clearly, the statute does not envision somebody carrying or removing something or just transporting it. *I think the word "transfer" is used in the statute to transfer possession of it from one person to another person.*

(N.T. July 18, 1980 at 730) (emphasis added). We believe the trial court correctly interpreted "transfer" within the context of § 6312(c), as meaning a change of possession from one person to another. We also agree with the lower court that "the legislature did not intend to include purely personal use of the material within its perview [sic], but it did intend to include all other interpersonal use." (Lower Court Opinion at 20). Thus, noncommercial trading or exchange of the material in question would also fall within the coverage of the statute.

Applying that definition to the instant case, we find that there was sufficient circumstantial evidence presented to show that appellant transferred or intended to transfer the child pornography in his possession. Janice Steckel testified that appellant wanted to take photographs of her daughter so that he could make her a movie star. (N.T. July 15, 1980 at 35, 109). In order to demonstrate the kinds of photographs he would take of her daughter, appellant showed Ms. Steckel a looseleaf booklet containing photo-

graphs of nude children engaged in various sexual acts. (*Id.* at 39–40). Pennsylvania State Trooper Patricia Moe, working undercover on the case, testified that appellant told her that he worked for "Piermont Pictures" and had applications for her to fill out. (*Id.* at 171–74). Trooper Moe also testified that appellant gave her a business card which read "Hollywood, New York, Las Vegas engagements, Piermont Pictures television and films, casting and bookings" and told her that the pictures he took would be sent to Europe:

Q. In his discussions with you about his business at Piermont Pictures, did he [appellant] tell you where the stills or the films would be distributed?

A. [Trooper Moe] Yes, he said all of the pictures of American children that are taken here are sent to Europe, so that I wouldn't have to worry about being embarrassed by possibly anyone that I knew or any family members seeing pictures of my daughter. And that conversely, all of the pictures that are taken in Europe are sent here.

(*Id.* at 181). Trooper Moe also gave her opinion that the photographs appellant would take of her fictitious daughter were to be obscene photographs "[o]f the type that would constitute a violation of the Pennsylvania statute prohibiting sexual abuse of children[.]" (*Id.* at 185–86). Police Detective Edward Hartman testified that he found in the trunk of appellant's automobile numerous envelopes and stationery with "Piermont Pictures" on the letterhead, job applications and business cards for "Piermont Pictures," a movie projector and screen, and various child and adult pornographic films and magazines. (N.T. July 16, 1980 at 232–36, 246–62, 302). Some of the magazines were European publications. (*Id.* at 253, 261). Two of the envelopes were marked with return addresses for companies in California and Maryland and contained informational brochures advertising sexual paraphernalia and order blanks. (Id. at 278–80). Thus, considering all of the Commonwealth's evidence, including the above-mentioned, and all reasonable

inferences therefrom, we believe that there was sufficient evidence to show that appellant possessed and displayed child pornographic materials in order to transfer possession of them to others. Accordingly, we hold that appellant's conviction for sexual abuse of children was supported by the evidence.

■ Appellant also contends that he was deprived of a fair trial when the lower court permitted the jury to view a portion of a film depicting child pornography and hear police testimony regarding certain adult pornography found in appellant's possession. He argues that such evidence was inflammatory and prejudicial. "The decision of whether to admit testimony under particular circumstances is within the discretion of the trial judge and will not be reversed absent an abuse of discretion." *Commonwealth v. Pilosky,* 239 Pa.Superior Ct. 233, 239, 362 A.2d 253, 256 (1976); *see Commonwealth v. Miller, supra.* "In exercising this discretion the court should counterbalance the probative weight of the evidence against the danger that the jury may be unduly aroused by the facts offered into evidence." *Commonwealth v. Honeycutt,* 227 Pa.Superior Ct. 265, 270, 323 A.2d 775, 778 (1974). Here, we find that the evidence in question was properly presented to the jury and consisted of only a small portion of the evidence found in appellant's possession at the time of his arrest.[*] Therefore, we believe that, even if the testimony regarding the adult pornography was irrelevant, the effect of such evidence on the jury would have been *de minimis.* Additionally, prior to the introduction of the evidence, the trial court gave the following cautionary instruction:

Members of the jury, what you are about to see is most unpleasant, and perhaps to some of you quite shocking. I think it is important to understand why you are looking

[*] "Of the thirty-seven (37) magazines, two (2) books, five (5) brochures and twenty-four (24) films admitted into evidence at trial, only four (4) magazines and fifteen (15) to thirty (30) seconds of one film was displayed to the jury in the jury box." (Lower Court Opinion at 16 n. *).

at it. It is not being introduced to inflame you or appeal to your passion or anything of that nature.

There are, however, certain factual issues which the Commonwealth must prove. They are offering these exhibits as being representative of all the exhibits in this case in support of their burden by the Commonwealth.

Unfortunately, it is part of your responsibility to view it so that you are able to more accurately determine whether the Commonwealth has met its burden or not.

(N.T. July 15, 1980 at 288). *See also* N.T. July 17, 1980 at 670, 672. Thus, we find that the lower court did not abuse its discretion in allowing this relevant evidence to be displayed to the jury.

■ Appellant next asserts that the trial court erred in refusing to permit defense counsel to inquire into the circumstances under which Janice Steckel left her employment at the Holiday Inn, when Steckel's credibility was at issue. We disagree. It is well settled that the scope of cross examination is within the sound discretion of the trial court. *Commonwealth v. Sisco*, 484 Pa. 85, 398 A.2d 955 (1979); *Commonwealth v. Bailey*, 450 Pa. 201, 299 A.2d 298 (1973); *see also Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978). Here, appellant's offer of proof revealed an attempt to show that Steckel had been released from her job for improper fraternization with hotel guests and that Steckel's testimony in this regard contradicted that of appellant. We find such a method of attacking credibility improper and irrelevant. *See Commonwealth v. Gaddy*, 468 Pa. 303, 311, 362 A.2d 217, 220 (1976) ("Evidence of prior misconduct unrelated to the issues at trial is admissible only insofar as it bears directly on the witness' *'character for truth.'* "); *Commonwealth v. Truitt*, 369 Pa. 72, 80, 85 A.2d 425, 429 (1951) ("A witness cannot be contradicted on collateral matters to test credibility[.]"); *Commonwealth v. McGuire*, 302 Pa.Superior Ct. 226, 232, 448 A.2d 609, 612 (1982) (credibility of witness may not be attacked by questions regarding instances of misconduct unrelated to the issue on trial); *Herr v. Erb*, 163 Pa.Superior Ct. 430, 434–45, 62 A.2d 75, 77–78 (1948) (witness can be contradict-

ed only on matters germane to issue at trial; no contradiction shall be permitted on collateral matters). *Cf. Commonwealth v. Bighum*, 452 Pa. 554, 556, 307 A.2d 255, 257 (1973), and *McIntosh v. Pittsburgh Railways Co.*, 432 Pa. 123, 125, 247 A.2d 467, 468 (1968) (prior convictions used to impeach credibility are limited to crimes involving dishonesty or false statements). Therefore, the lower court did not abuse its discretion in limiting the cross-examination.

■ Appellant also alleges error in the trial court's instructions to the jury that (1) the defendant has the burden of proving his innocence by a preponderance of the evidence on the possession of a prohibited offensive weapon charge, (2) possession of a prohibited offensive weapon is defensible only when the weapon is possessed as a curio, (3) the defendant could be convicted on the basis of circumstantial evidence alone when none of this evidence arose above the level of conjecture, and (4) portions of the argument of counsel were designed to appeal to the jury's emotions. "In a multitude of decisions, this Court has ruled that in evaluating the correctness of instructions to a trial jury, the charge must be read and considered as a whole, and it is the general effect of the charge that controls." *Commonwealth v. Rodgers*, 459 Pa. 129, 132, 327 A.2d 118, 120 (1974); *see also Commonwealth v. Ohle*, 503 Pa. 566, 582, 470 A.2d 61, 70 (1983). Here, with respect to possible defenses to the prohibited weapons charge, the trial court charged the following:

Now, the statute provides it is a defense to the charge of prohibited offensive weapons when the Defendant possessed or dealt with a weapon solely as a curio. Curio means a thing of curiosity—some memento, or something you came into possession of and you tack it up on the game room wall—something like that—simply as a matter of curiosity. The Defendant has the burden of proving this defense by a preponderance of the evidence.

Let me strike that. Let me read that to you again: It is a defense to a charge of a prohibited offensive weapons crime that the Defendant possessed or dealt with a weapon solely as a curio or under circumstances negating any

intent or likelihood that the weapon would be used unlawfully. The Defendant has the burden of proving this defense by a preponderance of the evidence. Thus, even though you may believe that the Defendant otherwise committed the crime charged, you must not find him guilty if you are satisfied by a preponderance of the evidence that the Defendant possessed the brass knuckles merely as a curio or under circumstances negating any intent or likelihood that the weapon would be used unlawfully.

In summary, if you are satisfied that the two elements of this offensive weapon crime have been proven beyond a reasonable doubt—in other words, the brass knuckles being an offensive weapon and being in the possession of the Defendant, and that the defense which I described has not been proven by a preponderance of the evidence— you should find the Defendant guilty. Otherwise, you must find the Defendant not guilty.

(N.T. July 17, 1980 at 690–91). See 18 Pa.C.S.A. § 908 (prohibited offensive weapons offense). After reviewing the record, we find that this charge was proper. See 18 Pa.C.S.A. § 908(b) (defendant has to prove by the preponderance of the evidence the "curio" and "circumstances negating any unlawful intent" defenses to the prohibited offensive weapons charge); Commonwealth v. Walton, 252 Pa.Superior Ct. 54, 58–60, 380 A.2d 1278, 1279–80 (1977) (en banc ) (in prosecution for possession of an offensive weapon, burden of proving possession of a sword cane as a curio within the statutory exception was upon the defendant); Commonwealth v. McFarland, 252 Pa.Superior Ct. 523, 529–34, 382 A.2d 465, 468–71 (1977) (en banc ) (prohibited offensive weapons statute was not rendered unconstitutional because of provision which placed burden on the defendant to prove by the preponderance of the evidence one of the enumerated defenses contained therein). Additionally, contrary to appellant's assertion, we note that the trial court did charge on both the "curio" and the "circumstances similarly negating any intent" defenses provided for in § 908(b).

■ With regard to the role of circumstantial evidence in determining guilt, the trial court instructed the jury that:

Circumstantial evidence alone may be sufficient to prove a Defendant's guilt. If there are several separate pieces of circumstantial evidence, it is not necessary that each piece standing separately convice you of the Defendant's guilt beyond a reasonable doubt. Instead, you may find the Defendant guilty on the basis of the pieces of circumstantial evidence, when considered together, that they must reasonably and naturally lead to the conclusion that the Defendant is guilty, and must convince you of the Defendant's guilt beyond a reasonable doubt. In other-words, you may find the Defendant guilty based on circumstantial evidence alone, but only if the total amount and quality of the evidence convinces you of the Defendant's guilt beyond a reasonable doubt.

(N.T. July 17, 1980 at 680–81). This charge is correct under our caselaw. *See Commonwealth v. Sullivan,* 472 Pa. 129, 149–50, 371 A.2d 468, 477–78 (1977); *Commonwealth v. Emmi,* 290 Pa.Superior Ct. 86, 93, 434 A.2d 142, 145 (1981); *Commonwealth v. Hunter,* 234 Pa.Superior Ct. 267, 270, 338 A.2d 623, 624 (1975).

■ We also find that the trial court's cautionary instruction to the jury to decide the case on its merits rather than on an emotional basis did not constitute prejudicial error. The court stated:

Now, frankly, I would say also to you, with respect to the summations of counsel, that some of the arguments presented were designed to appeal to your emotion. You should not decide this case on an emotional basis, but rather on your reason and judgment as justified by the evidence.

(N.T. July 17, 1980 at 672). *See Commonwealth v. Phillips,* 183 Pa.Superior Ct. 377, 382, 132 A.2d 733, 736 (1957) (new trial required only when the trial judge's remark is so prejudicial as to deprive the defendant of a fair and impartial trial).

■ Finally, appellant contends that the lower court abused its discretion in failing to consider all of the evidence presented at the sentencing hearing, namely, certain letters, reports, witness testimony, a pre-sentence statement and the fact that appellant had no prior convictions. This contention is controverted by the record, which reveals that the court adequately considered all relevant factors under the Sentencing Code in sentencing appellant. *See* N.T. March 8, 1982 at 4–47; 42 Pa.C.S.A. § 9721(b) (sentencing criteria); *cf. Commonwealth v. Wilson*, 306 Pa.Superior Ct. 372, 376, 452 A.2d 772, 774 (1982) (sentencing court need not expressly refer to the guidelines if it is clear that it considered the Sentencing Code factors). Therefore, we cannot say that the lower court abused its sentencing discretion. *Commonwealth v. Burtner*, 307 Pa.Superior Ct. 230, 232, 453 A.2d 10, 11 (1982) (imposition of sentence lies within the sole discretion of the sentencing judge).

Accordingly, we affirm the judgment of sentence.

Affirmed.