## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CT-01557-SCT

*MARCH MEEK*

*v.*

*STATE OF MISSISSIPPI*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 11/12/1997 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH A. FERNALD, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | DUNN LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/18/2001 |
| MOTION FOR REHEARING FILED: | 05/04/2001; 11/16/2001; denied 1/24/2002 |
| MANDATE ISSUED: | 10/25/2001; recalled 11/20/2001; 2/14/2002 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is granted. The original opinions are withdrawn, and this opinion is substituted therefor.

¶2. March Meek was convicted of transfer of marijuana in the Circuit Court of Lincoln County after he handed a shaving kit containing marijuana to a good Samaritan at the scene of an accident. He was sentenced to thirty years' imprisonment with twenty years suspended. The conviction and sentence were affirmed by the Court of Appeals by a 5-5 vote. *Meek v. State*, No. 97-KA-01557-COA (Miss. Ct. App. Feb. 8, 2000). We granted Meek's petition for writ of certiorari to consider whether the Court of Appeals improperly interpreted the transfer statute concerning marijuana.

### STATEMENT OF THE FACTS

¶3. March Meek was a passenger in Delinah Chauvin's car when they were involved in a serious accident. Before entering the car, Meek had placed several items in the back seat of the vehicle. One of those items was a shaving kit. Both Chauvin and Meek were injured in the accident. Meek was unable to get out of the vehicle until help arrived.

¶4. Phillip Hemby arrived at the scene and offered to help the victims. Hemby testified that when he approached Meek's side of the car, Meek handed him a shaving kit and asked him to "get rid of this." Hemby said that he was suspicious of the contents of the shaving kit. There was testimony that he could

smell marijuana. Hemby testified that he immediately handed the kit back to Meek. Hemby then left to help the driver of the other vehicle.

¶5. Chauvin testified that Meek asked her if she could get out of the car because he wanted her to dispose of something. She was unable or unwilling to discard the contraband. When Hemby returned to Chauvin's car, he saw the shaving kit lying on the shoulder of the road on Meek's side of the car, approximately 12 to 15 feet from the passenger door. Hemby testified that he kicked the shaving kit into a roadside ditch to preserve the kit as evidence for law enforcement officers. Hemby later directed a highway patrolman to the shaving kit on the side of the road. The officer opened it and found what appeared to be marijuana inside. An analysis by the Mississippi Crime Laboratory revealed that the kit contained over 140 grams of marijuana.

¶6. The indictment charged that Meek "did wilfully, unlawfully, feloniously, and knowingly, transfer more than one ounce of marihuana . . . to one Phillip Hemby." The jury found Meek guilty of transferring the controlled substance. He was sentenced as a habitual offender to thirty years' imprisonment with twenty years suspended. His conviction and sentence were affirmed by the Court of Appeals by a vote of 5-5. We granted March's petition for writ of certiorari.

## DISCUSSION OF LAW

¶7. In his petition for writ of certiorari, Meek raises two issues. He attacks the sufficiency of the evidence that he knew that marijuana was in the kit. He also argues that the conduct here, even if sufficiently proven, was not a transfer within the meaning of the statute.

## I. Sufficiency of the evidence.

¶8. Meek claims that there was not sufficient evidence that he knew that the drugs were in the shaving kit when he handed it to Hemby. He also states that "it was questionable as to whether he [Hemby] actually took the bag or not." However, the facts reveal nothing questionable as to whether Hemby actually took possession of the shaving kit. Hemby testified that Meek handed him the shaving kit and asked him if he would "get rid of this for him" when Hemby approached the passenger window of Chauvin's car. Chauvin also testified that Meek had asked her to dispose of the shaving kit. Meek admitted that the shaving kit in which the drugs were found was his. He also admitted that he owned the toiletries found in the shaving kit. Finally, he admitted that he had placed the kit in the back seat of Chauvin's car before the wreck. Meek argued that someone else could have placed the marijuana in the kit between the time when he put it in the car and when the marijuana was found in the kit after it had been located in the roadside ditch. Meek and Chauvin had stopped at a friend's house for approximately an hour before the wreck. The defense claimed that one of the people at the house could have placed the drugs in the kit during that time period. Both the Court of Appeals opinions found that there was sufficient evidence that Meek had possession of the marijuana.

¶9. When reviewing a challenge to the sufficiency of the evidence, this Court considers all of the evidence in the light most consistent with the verdict, giving the State the benefit of all inferences favorable to the verdict. *Jones v. State*, 669 So. 2d 1383, 1388 (Miss.1995). When the evidence before the jury is such that reasonable jurors could have found the defendant guilty, the verdict is beyond our authority to disturb. *Taylor v. State*, 672 So. 2d 1246, 1255 (Miss.1996). After reviewing the evidence, we find that the Court of Appeals plurality correctly found that there was sufficient evidence in this case that Meek did in

fact have knowledge marijuana was in his shaving kit.

## II. Whether the conduct here amounts to a transfer within the statute.

¶10. Meek was indicted for transferring the marijuana to Hemby when he handed the shaving kit containing the marijuana through the car window following the accident. The trial court concluded that "to transfer means to pass from one hand to the other." Meek argues that his actions did not amount to a transfer within the meaning of the relevant statute. We disagree.

¶11. Miss. Code Ann. § 41-29-139 (Supp. 2001) provides in part:

> (a) Except as authorized by this article, it is unlawful for any person knowingly or intentionally:

> (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, barter, transfer, manufacture, distribute or dispense a controlled substance . . . .

A definition of "transfer" is not statutorily provided. However, there are two words defined in the act that aid in the understanding of what "transfer" means. Miss. Code Ann. § 41-29-105 (Supp. 2001) provides in part:

> (h) "Deliver" or "delivery" means the actual, constructive, or attempted transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship.

> ***

> (*l*) "Distribute" means to deliver other than by administering or dispensing a controlled substance.

¶12. These terms are virtually interchangeable. We have analyzed the broad language contained in these definitions as being intended "to relieve the state of the task, oftentimes difficult if not impossible, of proving the consideration paid for the contraband, its intentions being to thwart the exchange or transfer of the substance whether accompanied by consideration or not." *Wilkins v. State*, 273 So. 2d 177 (Miss. 1973). As the Court of Appeals plurality explained, the definitions indicate that "the exchange of consideration, the intent to place the contraband in commerce, and even the success of the transfer are irrelevant to a factual determination of transfer or delivery." (Slip op. at ¶ 22).

¶13. Meek argues that his actions did not constitute a transfer because he did not intend to place the contraband in commerce nor intend to distribute the substance for economic gain. However, we have held that "distributing" a controlled substance as defined in the statute "includes transactions which are sales as well as transactions which may not be considered sales." *Rogers v. State*, 599 So. 2d 930, 934 (Miss. 1992). The intent of the deliver and transfer of narcotics statute is "to thwart the exchange or transfer of the substance whether accompanied by consideration or not." *Wilkins v. State*, 273 So. 2d 177 (Miss. 1973).

¶14. A transfer is a change of possession from one person to another. *See Commonwealth v. McCue*, 487 A.2d 880, 883 (Pa. Super. Ct. 1985). Also, a transfer is any act by which the holder of an object delivers it to another with the intent of passing whatever rights he has in the latter. *See United States v. Nutter*, 13 M.J. 803, 803-04 (A.F.C.M.R. 1981). The word "deliver" has been defined by this Court to be the equivalent of the word "transfer." *Evans v. State*, 460 So. 2d 824, 828 (Miss. 1984). In applying

the term "deliver" to the facts of this case, it is clear from this term's definition that Meek "actually, constructively, or attempted to transfer" his bag from himself to Hemby, who was immediately aware that the shaving kit contained marijuana. The shaving kit clearly passed from Meek's hands to another's, while Meek had the requisite intent to get this item out of his possession. There is no logical conclusion other than that Meek knew what was in the shaving kit, and he intended to conceal it by getting it out of his hands into the hands of another. Hemby kicked it into the side of the road in order to make law enforcement officers aware of the contents being marijuana.

¶15. The Court of Appeals correctly held that "to prove a transfer there is no need to show an intent to sell, as is necessary under an indictment for possession with intent to sell." (Slip op. at 9). We find that the only intent necessary is an intent to relinquish possession and control. The intent of the recipient is immaterial. All that is required is that Meek, the transferor, have knowledge of the character and presence of the controlled substance and that he intentionally transfer it to another with the intent to part with possession and control. That is exactly what occurred here.

¶16. Meek also argues that because Hemby never took the marijuana but immediately handed it back to Meek, the transfer was frustrated and never occurred. We have stated that "[p]ossession, no matter how fleeting, is sufficient to sustain a conviction [for possession of cocaine with intent to deliver]." *Berry v. State*, 652 So. 2d 745, 751 (Miss. 1995). Likewise, the fact that the handling by Hemby was momentary should not be a factor in determining whether there was a transfer in fact.

## CONCLUSION

¶17. There was sufficient evidence in this case that Meek did in fact have knowledge that marijuana was in his shaving kit. Furthermore, Meek's actions in handing the shaving kit containing the marijuana to Hemby constitute a transfer under the distribution statute. Therefore, judgments of the Court of Appeals and the Lincoln County Circuit Court are affirmed.

¶18. **JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED.**

**PITTMAN, C.J., MILLS, WALLER, COBB AND EASLEY, JJ., CONCUR. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. BANKS, P.J., AND DIAZ, J., NOT PARTICIPATING.**