IRVING, J., for the Court.
¶ 1. Alston King was convicted by a jury of one count of possession of cocaine with intent to distribute and one count of possession of marijuana with intent to distribute. The Sunflower County Circuit Court sentenced King to serve thirty years for the cocaine possession and ten years for the marijuana possession, with the ten-year sentence to run consecutively to the thirty-year sentence. The court also suspended the execution of the ten-year sentence. King was further ordered to serve five years of post-release supervision and was assessed a five-thousand-dollar fine. Aggrieved, King appeals and contends that the search leading to his arrest was unlawful, that the court erred in admitting several pieces of evidence, and that the weight and sufficiency of the evidence do not support his conviction.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. On January 28, 2003, a house in Moorhead, Mississippi caught on fire. When firefighters arrived on the scene, a crowd of people were attempting to control the blaze with a hose. As the house burned, explosions could be heard inside, indicating that ammunition was exploding in the fire. After the fire appeared to be extinguished, firefighters entered the house to look for “hot spots,” which were described as areas that have the potential to reignite. There was uncontradicted evidence that the firefighters had to move furniture and other debris in order to adequately search for hot spots. Before the firefighters entered the house, Officer *492 Bobby Fuller, Assistant Chief of the Moor-head Police Department, warned them to be careful due to the explosions that had been heard during the fire. Testimony indicated that Officer Fuller requested that the firefighters bring him anything “that he needed to know about....”
¶ 4. Joe Johnson, a volunteer fireman with the Moorhead Fire Department, testified about what he found as he went through the house looking for hot spots. In a bedroom, he moved a chest of drawers and discovered “two small weight scales” underneath. The scales were battery-powered, but no batteries were attached to them when they were introduced at trial. Johnson testified that he thought that the scales were suspicious because he had not “seen very many scales of that nature in house fires” and that he knew they could be used to weigh drugs. Accordingly, he gave the scales to his superi- or, and they were eventually turned over to police. Johnson also found a locked box in the corner of a closet as he was moving piles of clothing located on the floor to check for hot spots. Johnson testified that items of value must be removed from a burned home unless there is a way to secure them. The house in this case was burned too badly to be secured, and the lockbox was accordingly turned over to the police. An inoperable shotgun was also found under a couch in another room and was given to the police.
¶ 5. Various law enforcement officers knew or believed that King owned and lived in the residence, which had previously belonged to his parents. As a result, Officer Fuller instructed Officer Willie McGuire to ask King to come to the police department if Officer McGuire saw him during his patrol. The next day, Officer McGuire saw King, pulled him over, and told him that the police wanted to talk to him. King was not placed under arrest, and he went to the police department of his own volition.
¶ 6. At the police department, King was questioned about the contents of the locked metal box, of which he continually denied ownership. King eventually told the officers that he did not care what they did with the box and that they would “hang [him], anyway,” once they opened it. The officers retrieved bolt cutters and removed the lock from the box. Inside they discovered what appeared to be large quantities of cocaine and marijuana. King was placed under arrest and later charged with possession of cocaine with intent to distribute in the presence of a firearm and possession of marijuana with intent to distribute in the presence of a firearm. Testimony at trial indicated that there was oyer fifty thousand dollars’ worth of illegal drugs in the box.
¶ 7. King sought to have his statement suppressed, as he was not read his Miranda warnings prior to being questioned. King also sought to have the scales, the box, and the box’s contents suppressed prior to trial. All of his requests were denied. The jury found King guilty of both counts of possession, although it found that he did not possess the drugs in the presence of a firearm. Thereafter, King was sentenced by the court.
¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Suppression

¶ 9. “The admissibility of evidence rests within the discretion of the trial court, and reversal is appropriate only when a trial court commits an abuse of discretion resulting in prejudice to the accused.” Ross v. State, 954 So.2d 968, 992(¶ 44) (Miss. *493 2007) (citing Irby v. State, 893 So.2d 1042, 1047(¶ 20) (Miss.2004)). For the sake of clarity, we will separately address each piece of evidence that King claims should have been suppressed.

a. Admission of the Locked Box and Its Contents

¶ 10. King contends that the court erred in finding that he lacked standing to object to the search of the box because of his denial of ownership of the box. At the outset, we note that King provides no legal authority for his contention. “When a party on appeal assigns an error without any citation to authority, this Court will deem this failure to cite any authority as a procedural bar.” Givens v. State, 967 So.2d 1, 8(¶20) (Miss.2007) (citing Turner v. State, 721 So.2d 642, 649(¶ 27) (Miss.1998)).
¶ 11. Even if there were no procedural bar, we would find this issue to be without merit. When King denied ownership of the box, he relinquished the ability to object to its search and seizure. “It has long been the law in this state that if a person denies ownership or possession of property, he later has no standing to complain that the search of it was unlawful.” Waldrop v. State, 544 So.2d 834, 837 (Miss.1989) (citing Watkins v. State, 262 So.2d 422, 423-24 (Miss.1972); Ball v. State, 194 So.2d 502, 503 (Miss.1967)). Furthermore, even if King had not denied ownership, it is uncontested that he told the officers that they could do whatever they wanted with it, thus giving them implicit permission to open the box.
¶ 12. The search and seizure of the box was lawful, and the court did not err in admitting its contents into evidence.

b. Search of the House

¶ 13. King appears to complain generally about the search of his house by firefighters, quoting extensively from the Mississippi Supreme Court’s opinion in Rose v. State, 586 So.2d 746 (Miss.1991), which involved firefighters’ search of a residence. The opinion established that firefighters, specifically volunteer firefighters, are subject to the restrictions and limitations of the Fourth Amendment to the United States Constitution. Rose, 586 So.2d at 755. The court also noted, however, that firefighters who are entering a residence to investigate and extinguish a fire are serving “a compelling public interest,” and that “the warrant requirement does not apply in such cases.” Id. at 753.
¶ 14. Since the firefighters in the present case were responding to an emergency situation, they did not require a warrant to enter King’s home. Furthermore, testimony by Johnson established that the movement of furniture and other debris was required to properly search for hot spots. If firefighters miss a hot spot, there is a danger that the house could reignite, creating yet another emergency. There is no evidence that the firefighters in this case went on a fishing expedition to satisfy their curiosity or otherwise did more than necessary to search for hot spots. “In searching solely to ascertain the cause [of a fire], firemen customarily must remove rubble or search other areas where the cause of fires is likely to be found. An object that comes into view during such a search may be preserved without a warrant.” Michigan v. Clifford, 464 U.S. 287, 295 n. 6, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984).
¶ 15. King claims that “the criminal activity that firefighters were looking for was evidence of the possession of illegal drugs” and that “Johnson’s own testimony indicated that he was indeed looking for evidence of other criminal activity (drugs) not related to the fire.... ” However, Johnson testified that firelight *494 ers are trained “to recognize certain objects that may be used for illegal activities for our safety and anybody elses [sic] safety that enters that structure.” Nowhere in Johnson’s testimony did he indicate that he entered King’s home to look for evidence of drugs. It is logical that firefighters would seize any drugs or other objects that might be a danger to the public. Furthermore, it is clear that if an object’s criminal nature is readily apparent, it may be seized in such situations if the object is in plain view. Anderson v. State, 864 So.2d 948, 950(¶ 8) (Miss.Ct.App.2003); United States v. Green, 474 F.2d 1385, 1389 (5th Cir.1973); United States v. Loos, 165 F.3d 504, 506 (7th Cir.1998); United States v. Finnigin, 113 F.3d 1182, 1186 (10th Cir.1997). Quite simply, any criminal items that Johnson found in plain view were admissible without a warrant.
c. Admission of the Scales
¶ 16. Although King makes little separate argument about the admission of the scales found in the bedroom, we briefly address the propriety of their admission. It is indisputable that an item’s criminal nature must be apparent in order for the item to be seized under the plain view doctrine. Anderson, 864 So.2d at 950(¶ 8). We note that the scales in this case were found in a very odd location: underneath a chest of drawers in a bedroom. Furthermore, it is common knowledge that scales are often used to weigh illegal drugs; Johnson testified that that was why he collected the scales in the first place. Therefore, the scales were, at the least, quite suspicious.
¶ 17. However, even if the scales were improperly admitted, the evidence in support of King’s conviction is of such weight that any error in the scales’ admission was harmless. See Carter v. State, 722 So.2d 1258, 1262(¶ 14) (Miss.1998); Williams v. State, 960 So.2d 506, 510(1112) (Miss.Ct. App.2006).

d. Admission of King’s Statement

¶ 18. King contends that his statement should not have been introduced into evidence because he was not first read his rights as delineated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Statements are admissible without Miranda warnings only when a defendant is not subjected to custodial interrogation. Moore v. State, 933 So.2d 910, 919(¶ 30) (Miss.2006). “To be subject to custodial interrogation, one must be both in custody and undergoing interrogation. A subject is in custody when their right to freely leave has been restricted. The accused is subject to interrogation when he is questioned by the police or the functional equivalent.” Wilson v. State, 936 So.2d 357, 362(¶ 11) (Miss.2006) (citations omitted).
¶ 19. Although King was questioned by the police, there is no evidence in the record that he was not free to leave at any time during the questioning. King drove himself to the station and entered of his own volition. There is nothing to indicate that anything stopped him from thereafter leaving at any time. This contention of error is without merit.

2. Sufficiency of the Evidence

¶ 20. “When reviewing a case for sufficiency of the evidence, ‘the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ” Harris v. State, 970 So.2d 151, 155(¶ 16) (Miss.2007) (quoting Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005)). “The evidence must show ‘beyond a reasonable doubt that accused committed, the act charged, *495 and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ” Id. (quoting Bush, 895 So.2d at 843(¶ 16)). “If ... ‘reasonable and fair-minded [persons] in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ the evidence will be deemed to have been sufficient.” Id. (quoting Bush, 895 So.2d at 843(¶ 16)).
¶ 21. King specifically argues that the evidence was insufficient to prove that he possessed a controlled substance with intent to distribute the substance. To this end, King claims that “none of the normal elements used to prove intent existed. There was no evidence presented at trial that King had ever sold drugs on a prior occasion, or, for that matter, that drugs were sold from his residence.”
¶ 22. However, we note that there is evidence in the record to support the jury’s finding of intent, namely, the quantity of drugs that was found. There was uncontradicted evidence that the amount of drugs found, specifically over fifty thousand dollars’ worth, was too great an amount to be used simply for personal consumption. In White v. State, 842 So.2d 565, 575-76 (¶¶ 32-33) (Miss.2003), the Mississippi Supreme Court affirmed a conviction for possession with intent to distribute, noting:
[I]t is not necessary for the transferor to make a profit or that there be consideration for the transaction to constitute a transfer or distribution under the statute. Rogers v. State, 599 So.2d 930 (Miss.1992); Turner v. State, 573 So.2d 1340 (Miss.1990); Minor v. State, 482 So.2d 1107 (Miss.1986); Boone v. State, 291 So.2d 182, 184 (Miss.1974). Further, as we stated in Meek [v. State, 806 So.2d 236, 240(¶ 15) (Miss.2001) ]:
A transfer is a change of possession from one person to another. See Commonwealth v. McCue, 338 Pa.Super. 117, 487 A.2d 880, 883 (1985). Also, a transfer is any act by which the holder of an object delivers it to another with the intent of passing whatever rights he has in the latter. See United States v. Nutter, 13 M.J. 803, 803-04 (A.F.C.M.R.1981).... We find that the only intent necessary is an intent to relinquish possession and control. The intent of the recipient is immaterial. All that is required is that Meek, the transferor, have knowledge of the character and presence of the controlled substance and that he intentionally transfer it to another with the intent to part with possession and control.
The evidence was uncontradicted that King had more drugs than he could use for only his personal consumption. Therefore, the evidence is sufficient to show that King intended to distribute the drugs.
¶ 23. King further contends that “there was no evidence that tied [him] to the metal box in which the drugs were found, other than the location of the twice padlocked box in [his] home.” However, we note that there was no evidence presented to indicate that anyone other than King used the house in which the drugs were found. The box was found in a closet, underneath articles of clothing, in a house owned and used by King. Furthermore, King indicated knowledge of the box’s contents when he claimed that the officers would use what was in the box to “hang” him. We find that the evidence was sufficient to support a finding of constructive possession, inasmuch as reasonable jurors could have found that King possessed the box and its contents.
¶ 24. This contention of error is without merit.

*496
3. Weight of the Evidence

¶25. We will reverse a conviction for being against the overwhelming weight of the evidence only when “to allow it to stand would sanction an unconscionable injustice.” Boone v. State, 973 So.2d 237, 242(¶ 18) (Miss.2008) (quoting Brown v. State, 970 So.2d 710, 713(¶ 8) (Miss.2007)). As support, King reiterates his arguments regarding the sufficiency of the evidence supporting his conviction.
¶ 26. As we have already found, the evidence is sufficient to support King’s conviction. The box containing over fifty thousand dollars’ worth of controlled substances was found in the bottom of a closet in King’s house. No evidence was presented to indicate that the house was left unlocked or that anyone else had access to the house. Furthermore, King implicated himself in his statement to the police when he claimed that the police would use the contents of the box to hang him. Having reviewed the record, we cannot find that allowing King’s conviction to stand would sanction an unconscionable injustice. Therefore, this issue is also without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY OF CONVICTION OF COUNT I: POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF A TERM OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND CONVICTION OF COUNT II: POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE AND SENTENCE OF A TERM OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $5,000, WITH THE SENTENCES TO RUN CONSECUTIVELY AND THE EXECUTION OF THE SENTENCE IN COUNT II SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISH-EE, ROBERTS AND CARLTON, JJ., CONCUR.