378 A.2d 310

**COMMONWEALTH of Pennsylvania**

v.

**Dale Robertson TONEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 18, 1977.

Decided Oct. 7, 1977.

244

Stanley M. Poplow, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James A. Shellenberger, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

Appellant, Dale Robertson Toney, was tried before a judge and jury and convicted of murder of the first degree.

Post-verdict motions were denied and appellant was sentenced to life imprisonment. This appeal followed.

■ Appellant first contends that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of murder in the first degree. When reviewing the sufficiency of the evidence, we have repeatedly held that the evidence must be viewed in the light most favorable to the verdict winner giving that party the benefit of all reasonable inferences to be drawn. *Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675 (1975).

From the evidence, the jury could reasonably have concluded that the following circumstances surrounded the killing involved in this case. At 11:00 p.m., on October 18, 1974, Maurice Gray and the decedent, Steven Edwards, were standing on the corner of 56th and Lebanon Streets in Philadelphia, when they were surrounded by five youths. Appellant asked the pair where they were from. The decedent replied, "nowhere, we don't gang war." Another youth, Randy Coley, asked the pair for their addresses. Gray and the decedent responded with their street addresses. With no warning or provocation, Coley stabbed the victim in the chest. Gray turned and fled despite appellant's attempt to restrain him. As Gray fled, he heard shots fired but he was unable to identify the person firing the gun. The victim died within an hour from a single stab wound in the heart.

■ Appellant correctly points out that since he did not stab the victim, his conviction must be based on the theory that he was an accomplice of Coley. Section 306 of the Crimes Code provides that one can be convicted of being an accomplice if ". . . with the intent of promoting or facilitating the commission of the offense [one] . . . aids or agrees or attempts to aid such other person in planning or committing it . . ." 18 C.P.S.A. § 306(c). Appellant contends that the evidence was insufficient to show that the appellant either aided, agreed to aid, or attempted to aid Coley in stabbing Edwards. We do not

agree. We believe the appellant's conviction is supported by the evidence. The jury could reasonably have inferred from appellant's participation in surrounding the victim and his friend, from the evidence of appellant's initiation of the conversation, and from appellant's attempt to restrain Gray following the stabbing, that appellant had prior knowledge of Coley's intent and a prior agreement to aid Coley in carrying out that intent. Appellant would thus have come within the definition of an accomplice. *See Commonwealth v. Pierce*, 437 Pa. 266, 263 A.2d 350 (1970); Perkins, *Parties to Crime*, 89 U.Pa.L.Rev. 581 (1941). On the basis of the same evidence, we reject appellant's argument that the evidence was insufficient to establish that appellant was guided by a "conscious object" of causing the death of Edwards, and intended to help Coley to achieve that end. 18 C.P.S.A. § 306(d); 18 C.P.S.A. § 302(b)(1)(i).

Appellant also argues that the district attorney's summation to the jury was improper, inflammatory and prejudicial, requiring the reversal of the judgment of sentence and the granting of a new trial. We agree.

During the prosecutor's closing argument, the following remarks and objection were recorded:

"[Prosecutor]: . . . It is not pleasant at all to be a juror in a gang case. It is just not. It is not pleasant to be a District Attorney.

His Honor will give you the law of Pennsylvania. He will tell you different definitions of murder, and in the definition of murder is what we call conspiracy. Basically, what it means is that it does not matter that this defendant or the other three people did not do the stabbing. They are all as guilty as the stabber, because there is a hierarchy in gangs. They are gun boys, runners, all kinds of people. It is not—it is set up sort of like an army in the way except there are no membership roles or I.D. tags. If you are one of the members of the hierarchy, in a gang, or a particular position in a gang, you don't do the stabbing as a general rule. You say you do the stabbing to somebody else, or this boy carries a knife. The other

boy carries a gun, but they all knew what was going to happen.

No boy in the gang acts on his own when there is a group.

They went out and they went into that territory, and they knew what they were looking for. They were looking for two boys.

Now of course they probably surmised that these two boys are standing there. These must be members of another gang, and so, therefore, well let him have it, whatever went through their mind.

[Defense Counsel]: Objection, Your Honor. There is no evidence of this.

[Prosecutor]: I didn't say there was, Your Honor."

The A.B.A. Standards Relating to the Prosecution Function and the Defense Function (approved draft 1971) state:

"5.8 Argument to the jury.

"(a) *The prosecutor may argue all reasonable inferences from evidence in the record.* It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) *The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.*

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

5.9 Facts outside the record.

It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record whether at trial or on appeal, *unless such facts*

*are matters of common public knowledge based on ordinary human experience* or matters of which the court may take judicial notice." (Emphasis added.)

As the prosecutor correctly admitted, when defense counsel made his objection, there was no trial evidence from which the prosecutor's argument could have properly been drawn. There were references to the word "gang" during the trial: (1) Maurice Gray's *denial* that he was a gang member, (2) the deceased's mother's *denial* that her son was a gang member, and (3) the defendant's mother's *denial* that her son was a gang member. In effect, the prosecution created its own "facts" by asking questions resulting in negative responses.

The only other "evidence" in the record relating to "gangs" was the statement which the deceased made when asked where he was from: "No where. We *don't* gang war." This answer, of course, constituted *speculation* on the part of the deceased that the appellant and his friends were members of a gang.

There was no evidence in the record that the appellant *directed* the murder, as the prosecution suggested happens in gang warfare. Nor was there any evidence to indicate what appellant's position in the alleged gang might be. Further, there was no evidence in the record to establish that the general administrative processes of gangs requires that a leader delegate the mechanics of a murder to a subordinate. Such evidence must be in the record before the prosecution can be allowed to present the argument made in this case.

As we said in *Commonwealth v. Adkins,* 468 Pa. 465, 471, 364 A.2d 287, 290 (1976):

" ' . . . the District Attorney must limit his statements to the facts in evidence and legitimate inferences therefrom' . . . Moreover, as we clearly indicated in [*Commonwealth v.*] *Revty,* [448 Pa. 512, 517, 295 A.2d 300, 302,] conclusions advanced in argument to the jury must be reasonably drawn from the evidence. Since the only evidence to support the argument . . . was the

expression of a *speculative belief* . . . it can hardly be said that the argument was 'reasonably drawn from the evidence.' " (Emphasis added.)

The closing argument made by the prosecutor may have played a very important role in convincing the jury of the appellant's guilt. The prosecution was attempting to bridge a gap between the act of the perpetrator and the involvement of the appellant. Whether the appellant was an uninvolved bystander or an accomplice to murder may have been resolved differently by the jury had not the prosecution presented the unwarranted opinion that a person involved in a gang hierarchy delegates to a subordinate the actual commission of the crime.

Because we reverse and remand for a new trial because of the improper comments by the prosecutor, we need not consider other issues raised by appellant.

The judgment of sentence is reversed and a new trial granted.

JONES, former C. J., and POMEROY, J., did not participate in the consideration or decision of this case.

O'BRIEN, J., concurs in the result.