J-S22032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES KENNETH STEELE, | |
| Appellant | No. 1016 MDA 2016 |

Appeal from the Judgment of Sentence May 24, 2016
in the Court of Common Pleas of Cumberland County
Criminal Division at No.: CP-21-CR-0002244-2015

BEFORE:  SHOGAN, J., MOULTON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:　　　　　　　　　　**FILED MAY 16, 2017**

Appellant, Charles Kenneth Steele, appeals from the judgment of sentence imposed following his jury conviction of burglary and related charges.[1]  Appellant challenges the weight and sufficiency of the evidence. We affirm on the basis of the trial court's opinion.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  (**See** Trial Court Opinion, 8/11/16, at 2-4).  Therefore, we have no reason to restate them at length here.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This was a second trial.  In the previous trial, the jury could not reach a unanimous verdict, and the trial court declared a mistrial.  (**See** Order, 1/29/16).

For the convenience of the reader, we note briefly that Appellant was convicted of the theft of money from "Trades Cars and Trucks," the used car dealership where his long-time paramour and co-conspirator, Sue Ellen Leonhard, worked. Ms. Leonhard had a key to the office and knew where her employer kept cash between bank deposits.

Ms. Leonhard claimed that even though she initially agreed to cooperate in the burglary, and entered the premises (twice) with Appellant, she had a change of heart and left. Later, about five that morning, Appellant called her by cell phone. He confirmed he had stolen the money, and promised to meet Leonhard in a few days to divide the proceeds of the theft.

A few days later, her employer discovered the cash was missing. Leonhard denied any knowledge, and tried to cover up the burglary by replacing some of the missing cash with her own funds. Nevertheless, she was fired. She lied repeatedly to the police, until she finally agreed to cooperate. Even then her explanations of certain details were still inconsistent.

Leonhard admitted at trial that she had four previous *crimen falsi* convictions. She conceded that she had lied repeatedly to police when they began to investigate this theft. She acknowledged that she hoped for consideration from the District Attorney's office for her cooperation, but denied that she had been promised any specific benefit.

On March 23, 2016, the jury convicted Appellant of burglary,[2] criminal conspiracy (burglary),[3] criminal trespass,[4] and theft by unlawful taking.[5] The court imposed an aggregate sentence of not less than nine months nor more than twenty-three months' incarceration. The trial court denied Appellant's motion for a new trial, which challenged the weight of the evidence. (**See** Order, 6/09/16). This timely appeal followed.[6]

Appellant raises two issues for our review:

   I.   Did the trial court abuse its discretion in denying Appellant's motion for a new trial challenging the verdict as against the weight of the evidence as the co-defendant's testimony at trial was not credible?

   II.  Was the evidence insufficient to support guilty verdicts where the Commonwealth failed to prove beyond a reasonable doubt that Appellant entered Trades Cars and Trucks, conspired with another to enter Trades Cars and Trucks for the purpose of committing a theft, or unlawfully took any money from Trades Cars and Trucks?

(Appellant's Brief, at 7) (unnecessary capitalization omitted).

---

[2] 18 Pa.C.S.A. § 3502(a)(4).

[3] 18 Pa.C.S.A. § 903.

[4] 18 Pa.C.S.A. § 3503.

[5] 18 Pa.C.S.A. § 3921.

[6] Appellant filed a court-ordered statement of errors, on July 18, 2016. The trial court filed a Rule 1925(a) opinion on August 11, 2016. **See** Pa.R.A.P. 1925.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to the issues Appellant has raised on appeal. The trial court opinion properly disposes of the questions presented. (**See** Trial Court Opinion, 8/11/16, at 5-10) (concluding: (1) conviction was not against weight of evidence where jury was informed of co-defendant's past crimes and inconsistent statements, but still found her to be credible; jury was free to believe all, some or none of evidence; jury's verdict did not shock conscience of court; and (2) viewed in light most favorable to Commonwealth as verdict winner, evidence presented to jury, including testimony of co-conspirator Leonhard (and her husband) as corroborated by cell telephone records placing Appellant in vicinity of business office around time of theft, was sufficient to support guilty verdict).

Accordingly, we affirm on the basis of the trial court's opinion.[7]

---

[7] Furthermore, we agree with the trial court that Appellant's boilerplate assertion of generic insufficiency was inadequate to identify which elements of multiple charges were allegedly not proven. (**See** Trial Ct. Op., at 7). Moreover, we add that Appellant's claim that co-defendant Leonhard was "wholly unbelievable" is not a challenge to sufficiency, but a variation on his weight claim. (Appellant's Brief, at 17). **See Commonwealth v. Griffin**, 65 A.3d 932, 939 (Pa. Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013) (claim defendant was wrongly identified as perpetrator of crimes based on "unbelievable identification testimony" went to credibility and weight, not sufficiency, of evidence).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/16/2017

522032-17

| COMMONWEALTH | : IN THE COURT OF COMMON PLEAS OF |
| | : CUMBERLAND COUNTY, PENNSYLVANIA |
| | : |
| | : CP – 21 – CR – 2244 – 2015 |
| | : |
| v. | : CHARGES: (1) BURGLARY |
| | : (2) CRIMINAL CONSPIRACY- |
| | : BURGLARY |
| | : (3) CRIMINAL TRESPASS |
| | : (4) THEFT BY UNLAWFUL |
| CHARLES KENNETH STEELE | : TAKING |

## IN RE: OPINION PURSUANT TO PA. R.A.P. 1925(a)

**Ebert, J., August 11, 2016 –**

In this post-trial appeal, Appellant challenges his conviction on the charges of burglary, criminal conspiracy - burglary, criminal trespass and theft by unlawful taking. Trial was held on March 21-23, 2016, and the jury's verdict of guilty on all counts was entered on March 23, 2016. This Opinion is written pursuant to Pa. R.A.P. 1925(a). Appellant's bases for appeal are as follows:

1. The trial court abused its discretion in denying Appellant's Motion for a New Trial challenging the verdict as against the weight of the evidence as the co-defendant's testimony at trial was not credible.

2. The evidence was insufficient to support guilty verdicts for the above captioned charges as the Commonwealth failed to prove beyond a reasonable doubt that Appellant entered Trades Cars and Trucks, conspired with another to enter Trades Cars and Trucks for the purpose of committing a theft, or unlawfully took any money from Trades Cars and Trucks.

1

28



## Statement of Facts

Co-Defendant, Sue Ellen Leonhard, testified at trial that she was engaged in a long-term, extramarital affair with Appellant.[1] Co-Defendant testified that, following their rendezvous on the evening of June 06, 2015, Appellant proposed that they enter co-Defendant's place of employment, Trades Cars and Trucks.[2] The purpose of entering the business was to steal approximately $10,000,[3] which represented the business's cash transactions during the preceding two weeks.[4] Co-Defendant testified that she knew where the money was kept on-premises,[5] and had access to the keys to the building.[6] Co-Defendant further testified that she was reluctant to steal from her employer and risk losing her job.[7]

Appellant and co-Defendant waited until approximately 1:00 A.M. on June 07, 2015, before driving to Trades Cars and Trucks and parking a short distance away.[8] After arriving at the dealership, Appellant and co-Defendant noticed that a nearby bar was still open, and that an individual that was standing in front of the bar had a clear line of sight to Trades Cars and Trucks.[9] Appellant and co-Defendant feigned interest in the vehicles displayed on the lot, then decided to leave after noting that there was too much activity in the area to successfully break into the car dealership.[10] At approximately 3:00

---

[1] Notes of Testimony, In Re: Jury Trial, 67-68, March 22, 2016 (Hereinafter, N.T. ___ of March __, 2016).
[2] N.T. 63 of March 22, 2016.
[3] N.T. 82 of March 22, 2016.
[4] N.T. 52 of March 22, 2016.
[5] N.T. 89 of March 22, 2016.
[6] N.T. 88 of March 22, 2016.
[7] N.T. 90-91 of March 22, 2016.
[8] N.T. 83-84 of March 22, 2016.
[9] N.T. 84-86 of March 22, 2016.
[10] Id.

A.M., Appellant and co-Defendant returned to the car dealership and were successful in entering the premises through use of a key kept hidden in the mailbox.[11]

After entering the business, co-Defendant testified that she developed cold feet and refused to be complicit in the theft.[12] Appellant brought co-Defendant back to her vehicle at approximately 3:45 A.M., and promised that he would complete the theft on his own.[13] At approximately 5:00 A.M., co-Defendant received a call from Appellant, informing her that the theft was successful and that Appellant would meet her in a few days to divide the proceeds of the theft.[14] Cellular telephone records provided by T-Mobile indicated Appellant's presence within the cellular coverage zone providing service to Trades Cars and Trucks at the approximate time of the second break-in.[15]

On June 08, 2015, co-Defendant arrived at work to discover that the office was ransacked,[16] the exterior door unlocked and the key that had been hidden in the mailbox was missing.[17] Co-Defendant attempted to cover up the crime to the best of her abilities.[18] That included replacing approximately $6,000 of the stolen funds using her personal money[19] and replacing the missing key on June 09, 2015.[20] The theft was detected on June 10, 2015, and suspicion quickly fell on co-Defendant,[21] who was promptly fired from her job.[22] Prior to her scheduled interview with the New Cumberland

---

[11] N.T. 88 of March 22, 2016.

[12] See Note 7, supra.

[13] N.T. 91 of March 22, 2016.

[14] N.T. 93 of March 22, 2016 (indicating that the phone call was placed at approximately 5:07 A.M. on Sunday, June 07, 2015).

[15] See Note 38, infra.

[16] N.T. 95-96 of March 22, 2016.

[17] N.T. 95, 100 of March 22, 2016.

[18] N.T. 96 of March 22, 2016.

[19] Id.

[20] N.T. 100-101 of March 22, 2016.

[21] N.T. 102 of March 22, 2016; see also N.T. 40 of March 21, 2016.

Police Department on June 12, 2015, Appellant called co-Defendant and asked her to accept sole responsibility for the crime.[23] Co-Defendant refused, and named Appellant to the police investigators. The police contacted Appellant, who had returned to Texas, and informed him that a warrant had been issued for his arrest and that the police wished to speak with him in connection to the break-in.[24] Appellant returned to Pennsylvania and was interviewed regarding the break-in and any knowledge he possessed of same.[25]

The matter proceeded to trial, where Appellant was found guilty on all charges and sentenced to a term of incarceration of not less than nine months or more than twenty three months.[26] Appellant timely filed a post-trial motion, seeking a new trial on the grounds that the weight of the evidence was insufficient to support conviction,[27] which was denied by Order of Court dated June 08, 2016.[28] On June 22, 2016, Appellant filed his notice of appeal, and on that same day Appellant was ordered by this Court to file his Concise Statement no later than July 13, 2016. On July 18, 2016, Appellant served this Court with his concise statement of errors pursuant to Pa. R.A.P. 1925(b), prompting this Opinion pursuant to Pa. R.A.P. 1925(a).

---

[22] N.T. 104 of March 22, 2016.

[23] N.T. 105 of March 22, 2016.

[24] N.T. 166 of March 22, 2016.

[25] N.T. 167 of March 22, 2016.

[26] See Order of Court In Re: Sentence, filed May 24, 2016.

[27] See Post-Sentence Motions, filed June 02, 2016.
[28] See Order of Court In Re: Motion for New Trial, filed June 08, 2016.

4

## Discussion

Appellant raises two errors on appeal, arguing that this Court improperly denied his post-trial motion for a new trial and that Appellant was improperly found guilty of the charges against him. These challenges invoke the weight of the evidence and the sufficiency of the evidence, respectively. For the following reasons, this Court properly denied Appellant's post-trial motion for a new trial, and properly accepted the findings of the jury that Appellant was guilty on all charges.

### i.    Weight of the evidence

To begin, as stated by the Superior Court in Com. v. Galindes, 2001 PA Super 315, 786 A.2d 1004, 1013 (Pa. Super. 2001), when reviewing the weight of the evidence:

> [A] true weight of the evidence challenge 'concedes that sufficient evidence exists to sustain the verdict' but questions which evidence is to be believed.

Com. v. Galindes, supra, citing to Armbruster v. Horowitz, 1999 PA Super 333, 744 A.2d 285, 286 (Pa. Super. 1999). The Galindes Court further stated:

> An appellate court may review the trial court's decision to determine whether there was an abuse of discretion, but it may not substitute its judgment for that of the lower court. Indeed, an appellate court should not entertain challenges to the weight of the evidence since our examination is confined to the "cold record." Com. v. Murray, 408 Pa. Super. 435, 597 A.2d 111, 113 (Pa. Super. 1991). Our Court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *Id.* "Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." Com. v. Valette, 531 Pa. 384, 613 A.2d 548, 549 (Pa. 1992). Our review, therefore, is confined to whether the trial court abused its discretion.

Com. v. Galindes, supra (emphasis original).

5

"It is the province of the jury to assess the credibility of witnesses, and a trial judge will not grant a new trial merely because of a conflict in the testimony or because he would have reached a different conclusion on the same facts, if he had been the trier of fact." Com v. VanDiviner, 599 Pa. 617, 630, 962 A.2d 1170 (Pa. 2009) (internal citations omitted). Here, Appellant contends that this Court erred by abusing its discretion in the denial of Appellant's motion for a new trial, as the verdict was against the weight of the evidence due to the purported incredibility of co-Defendant's testimony at trial. The factfinder, a duly-empaneled jury, had the opportunity to observe co-Defendant as she testified and was free to believe all, some or none of her testimony against Appellant. Clearly, the factfinder found co-Defendant sufficiently credible to support finding Appellant guilty of all of the charges against him. This Court did not find the jury's conclusions regarding Appellant's guilt and the credibility of co-Defendant to be shocking to its sense of justice, and properly denied Appellant's motion for a new trial. As such, this Court's decision to deny Appellant's post-trial motion for a new trial should properly be affirmed on appeal.

## ii.    The sufficiency of the evidence

In the alternative, Appellant contends that there was insufficient evidence to sustain guilty verdicts against him for the charges of burglary, criminal conspiracy - burglary, criminal trespass and theft by unlawful taking. As stated by the Supreme Court:

> The test for sufficiency of the evidence is whether accepting as true all of the evidence reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by

6

> evidence and inferences sufficient in law to prove guilt
> beyond a reasonable doubt.

Commonwealth v. Lovette, 450 A.2d 975, 977 (Pa. 1982).

Here, based on Appellant's concise statement of errors, it appears that he concedes that all of the elements of the crimes were proven beyond a reasonable doubt except for the identity of the perpetrator. Appellant's concise statement was examined in light of Com. v. Tyack, 128 A.3d 254, 260 (Pa. Super. 2015), wherein the Superior Court noted that the use of a boilerplate declaration that the evidence was insufficient to support a conviction did not sufficiently identify the elements of the crime an appellant contended were insufficiently proven. Id. Here, it appears that Appellant specified that the Commonwealth failed to prove that he was the perpetrator of the crimes in question. In other words, Appellant appears to concede that the crimes occurred in the location and on the date and time alleged, but challenges the jury's conclusion that he committed them.

Co-Defendant testified that Appellant transported her to Trades Cars and Trucks two times between 1:00 A.M. and approximately 3:00 A.M. on June 07, 2015, with the intention of using co-Defendant's key and knowledge of the business to unlawfully enter the business office and steal money located on-site.[29] Co-Defendant testified that, but for her insistence that the money not be taken, Appellant would have unlawfully removed the funds in question from the premises at approximately 3:00 A.M. Co-Defendant further testified that Appellant called her at approximately 5:00 A.M.,[30] and

---

[29] While co-Defendant testified that she did not use her key to access the business, she further testified that the reasons for this were that she did not want Appellant to know she had her key, and because she knew a spare key was kept in the business mailbox. N.T. 88, 115-116 of March 22, 2016.

[30] Co-Defendant testified that the call was approximately one minute long. N.T. 93 of March 22, 2016.

7

briefly informed her that he returned to Trades Cars and Trucks and completed the theft without the further assistance of co-Defendant. James Layton, Sr., owner of Trades Cars and Trucks, (hereinafter, "Victim") testified that Appellant had no authorization to be on the premises whatsoever[31] and that co-Defendant did not have authorization to be on the premises during the time frame in question.[32] The business was usually closed from 3:00 P.M. on Saturdays until 10:00 A.M. on the following Monday.[33] Victim further testified that only he, his son and co-Defendant had keys to the building,[34] and that his son did not handle any money whatsoever on behalf of the business.[35]

Pursuant to Lovette, supra, that testimony must be considered in the light most favorable to the Commonwealth, along with all reasonable inferences therefrom. That testimony showed that Appellant and co-Defendant did not have authorization to be on the premises, that Appellant was on the premises for the purpose of unlawfully entering the business office, and that the objective of unlawfully entering the business office was to steal money located in the business's cash drawer. The testimony further showed that Appellant and co-Defendant did unlawfully enter the business office together to steal the money in question, but were initially thwarted by co-Defendant's change of heart. Again, in the light most favorable to the Commonwealth, the testimony showed

---

[31] N.T. 32-33 of March 21, 2016 (stating that no one is authorized to be on the premises outside of normal business hours without his express permission, and that co-Defendant did not have authorization to bring anyone onto the premises after business hours).

[32] Id.

[33] N.T. 20 of March 21, 2016.

[34] N.T. 21 of March 21, 2016.

[35] N.T. 38 of March 21, 2016.

8

that Appellant returned to the business at approximately 5:00 A.M. without co-Defendant, and successfully completed the theft. Appellant later told co-Defendant that he wanted her to take sole responsibility for the crime in order to protect his career and family life.[36]

In addition to the above testimony, the Commonwealth presented Appellant's cellular telephone records. The records included locational metadata, providing the approximate location of the caller and call recipient within a roughly two and a half mile radius from the relevant cellular tower.[37] The phone records indicated that Appellant placed an approximately one minute long call to co-Defendant around 5:00 A.M. on the day of the break-in, from a location within the cellular tower coverage range of Victim's place of business.[38]

In short, co-Defendant testified regarding Appellant's direction of and involvement in the break-in. The cellular metadata demonstrated a corroborating phone call by Appellant to co-Defendant at approximately 5:00 A.M. on the morning of the break-in, placed by Appellant from the vicinity of Victim's business. T-Mobile's business records demonstrated that Appellant and co-Defendant communicated by voice and text message numerous times between June 06, 2015, the evening before the break-in, and June 12, 2015, the day co-Defendant participated in a police interview concerning the

---

[36] See Note 23, supra.

[37] N.T. 146 of March 22, 2016.

[38] The cellular tower in question was located approximately two blocks from Victim's place of business. Appellant placed the 5:00 A.M. phone call from within the two and a half mile radius of that specific tower. N.T. 168-169 of March 22, 2016.

theft,[39] following which all communications between the two ceased.[40] It would be reasonable for the jury to infer Appellant's involvement in the crimes, reviewing that information in the light most favorable to the Commonwealth. For the foregoing reasons, the guilty verdicts reached by the jury were sufficiently supported by the evidence submitted at trial, and the guilty verdicts should properly be sustained on appeal.

## Conclusion

There was sufficient evidence produced at trial to prove beyond a reasonable doubt that Appellant entered into a criminal conspiracy with co-Defendant to break into Trades Cars and Trucks, for the purpose of stealing approximately $10,000 in cash kept in a locked cash drawer on the premises. The evidence showed that co-Defendant and Appellant first entered the premises at approximately 3:00 A.M. on June 07, 2015, after an aborted attempt at 1:00 A.M., which was thwarted by the presence of nearby potential witnesses. Appellant and co-Defendant removed the cash from the locked cash drawer at that time, but returned it upon co-Defendant's insistence. Following the 3:00 A.M. attempted theft, co-Defendant returned to her house while Appellant returned to the business and successfully removed the $10,000. The Commonwealth submitted sufficient evidence at trial to prove Appellant's participation in the theft, including telephone records placing Appellant in the vicinity of the business at the time of the theft and the testimony of co-Defendant implicating Appellant. The jury properly weighed the credibility of co-Defendant in assessing her testimony against Appellant. Thus, the guilty verdicts returned by the jury were properly supported by the available evidence

---

[39] N.T. 174 of March 22, 2016 (wherein co-Defendant's phone records indicated six consecutive calls or text messages between Appellant and co-Defendant on June 06, 2015, followed by the 5:07 A.M. call on the morning of June 07, 2015).

[40] N.T. 108-109 of March 22, 2016.

10

submitted at trial, which the jury carefully weighed and considered, and therefore should properly be affirmed on appeal.

By the Court,

_____
M. L. Ebert, Jr.,                          J.

Matthew P. Smith, Esquire
District Attorney's Office

Joshua M. Yohe, Esquire
Assistant Public Defender
Attorney for Defendant

Copies delivered on _____ AUG 1 2 2016

11