J-S35022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAWRENCE JOSEPH DAY | : | |
| | : | |
| Appellant | : | No. 216 MDA 2025 |

Appeal from the Judgment of Sentence Entered January 15, 2025
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-CR-0000009-2021

BEFORE:  OLSON, J., MURRAY, J., and LANE, J.

CONCURRING AND DISSENTING MEMORANDUM BY OLSON, J.:

**FILED: MARCH 3, 2026**

I agree with the learned Majority that the trial court properly denied Appellant's suppression motion.  However, I respectfully disagree with my colleagues' conclusion that the evidence was insufficient to support Appellant's possession with intent to deliver ("PWID") conviction.  Therefore, I must dissent, in part.

We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the

Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

On appeal, Appellant claims that the evidence was insufficient to support his PWID conviction because: "the Commonwealth did not establish that there were any controlled substances found in the residence and no testimony was offered by the Commonwealth that the substances found in the residence were counterfeit." Appellant's Brief at 12. I believe these claims fail.

After the Commonwealth rested its case, Appellant objected to the Commonwealth's laboratory reports, that, *inter alia*, identified certain seized items as controlled substances and detailed the weights of each item,[1] contending that the reports must be excluded, as the Commonwealth failed to provide him with notice it intended to offer the forensic laboratory reports at trial and the Commonwealth also failed to introduce the testimony of the

---

[1] Earlier in the trial, the trial court admitted the Commonwealth's laboratory reports into evidence. **See** N.T. Trial, 9/12/24, at 51 (admitting "Exhibits 63 to 65 into evidence").

analyst who performed the laboratory testing. *See* N.T. Trial, 9/12/24, at 109; *see also* Pa.R.Crim.P. 574; *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). The trial court sustained Appellant's objection and instructed the jury:

> So Commonwealth Exhibits 63, 64, and 65, those were the three lab reports. Those were the first exhibits that [were] entered by the Commonwealth. [These a]re no longer [in] evidence so that you cannot – those are not to be considered as evidence.

N.T. Trial, 9/12/24, at 123.

Although the trial court sustained Appellant's belated objection and excluded the laboratory reports, the trial court did not strike the prior testimony of Pennsylvania State Police Trooper Aaron Brown, Corporal Daniel Woody, or Corporal Jared Muir – all of whom testified that the police discovered controlled or counterfeit controlled substances in Appellant's possession and further testified that, viewing the totality of the circumstances, Appellant "was engaging in the manufacture, production, and delivery of controlled substances." *See*, *e.g.*, *id.* at 61.

Trooper Brown testified:

> So during our sweep . . . I observed what appeared to me a large sum of cash money on the table. I also saw red packaging material, as well as a bag of synthetic marijuana.
>
> . . .
>
> In room 3, which is identified as [Appellant's] room, I seized one cell phone. There was packaging material which was – I believe it was the red baggies. One Social Security card for [Appellant]. There [were] four PA inspection stickers that

were determined to be false, fake inspection stickers. There was a plastic bag with green vegetable matter which I believe was later identified as spice, as what we believed. . . .

[T]here was a bag of marijuana. There was an additional two cell phones. There [were] three digital scales. There was another plastic bag containing baggies that were packaging material. There was a CBD vape cartridge that we seized, a bag containing gummies, a green turtle smoking device . . . for smoking narcotics.

So all of that, as well as during the search underneath the bed within that room we seized two firearms. One was a Taurus revolver that was a 45 caliber, as well as 410 caliber revolver pistol. It also had an obliterated serial number, which means the serial number was scratched off so it's not able to be [run] by police, essentially. As well as the other firearm was the one Smith and Wesson 38 caliber revolver pistol that had also an obliterated serial number. . . .

Through our lab, when we took the guns to the lab, they were able to dig down and find the serial numbers, which was later to be determined that one was stolen from Lycoming County and one was stolen from Snyder County in the Middleburg area. As well as two boxes of [nine-]millimeter ammunition.

[The police also seized a number of items from a second room in the house. There] we seized five cell phones, two additional digital scales, another bag of suspected marijuana. Six smoking devices, one with the use of methamphetamine. Three containers with unknown pills. One bag containing red baggies, which is multiple baggies. One pill container with unknown white substance. One large box, cardboard, containing marshmallow leaf cut. One – an additional box containing mullein leaf in a cardboard box. As well as [$520.00].

Now, with these boxes of marshmallow leaf and [] mullein leaf, this was addressed to [Appellant], at that address. As well as the packaging material as you hear throughout, these are all empty packaging material. There was no residue in most of these packaging material.

N.T. Trial, 9/12/24, at 31, 34-35, and 39.

- 4 -

Trooper Brown further testified that the police recovered marijuana, Gabapentin, Tramadol, Alprazolam, Clonazepam, and cocaine from Appellant's rooms. *Id.* at 41-43. He testified:

> Q: So based on your knowledge, training, and experience as a trooper, what did the discovery of the packaging materials and the bags containing the red small baggies, pill bottle, and the unknown white substance which you have now identified as cocaine, marijuana, and synthetic marijuana, and the three scales found in [Appellant's] room, what did that lead you to believe?
>
> [Trooper Brown]: It led me to believe that he was ordering the leaf and then he was spraying it and distributing it out as spice. Which he had the scales so he can measure out how much to put in each bag and how to sell and to price it from there.

*Id.* at 43.

Corporals Woody and Muir testified similarly to Trooper Brown. Specifically, Corporal Woody testified:

> Q: And you were present – were you present for the search of the residence?
>
> A: Yes. . . .
>
> Q: Okay. And based on your knowledge, training, and experience as a trooper, what did the discovery of the packaging material, the bags containing smaller red baggies, other packaging material, pill bottle with unknown, what we now know is – was cocaine, marijuana and synthetic marijuana, and the three scales, lead you to believe?
>
> A: Based on my training and experience it suggested that the controlled substances were being distributed, packaged.

Q: Yep. And can you explain the packaging material? What was the packaging material like? Was it used, unused, empty?

A: It appeared empty and new.

. . .

Q: And what was – based on your knowledge, training, and experience, what would that tell you?

A: That they had not been consumed, that they're – that it was to be used.

*Id.* at 55.

Corporal Muir then testified:

Q: Okay. Based on your knowledge, training, and experience as a trooper, now corporal, what did the discovery of these packaging materials and the bag containing smaller bags, the pill[] bottle and [] what now we know is cocaine, marijuana, synthetic marijuana, and the three scales that were located in [Appellant's] room, what did that lead you to believe?

A: It was evident to me that [Appellant] was engaging in the manufacture, production, and delivery of controlled substances.

*Id.* at 61.

A sufficiency of the evidence claim "will not be assessed on a diminished record, but rather on the evidence actually presented to the finder of fact rendering the questioned verdict." *Commonwealth v. Lovette*, 450 A.2d 975, 977 (Pa. 1982). Here, while the trial court might have sustained Appellant's belated objection and excluded the laboratory reports, the trial court did not strike the testimony of Trooper Brown or Corporals Woody and Muir; and, as is evident from the above-quoted testimony, all three individuals

testified that Appellant possessed controlled or counterfeit controlled substances with the intent to distribute. *See Commonwealth v. Ratsamy*, 934 A.3d 1233, 1236-1237 (Pa. 2007) ("[t]he amount of the controlled substance is not crucial to establish an inference of possession with intent to deliver, if other facts are present") (quotation marks, citations, and corrections omitted).

Viewing the above evidence in the light most favorable to the Commonwealth, I believe it is sufficient to sustain Appellant's PWID conviction. I thus conclude that Appellant's sufficiency of the evidence claim fails.

Therefore, I respectfully concur, in part, and dissent, in part, from the learned Majority's memorandum.